UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| V. | : Case No. 3:01 CR 213 (AVC) |
| JEFFREY LORENZO, ET AL | : |
| | : May 29, 2008 |

## DEFENDANT'S MOTION FOR RECONSIDERATION OF HIS MOTION TO MODIFY A CRIMINAL JUDGMENT

Comes now the defendant, by and through his counsel, entreating this Court to reconsider and set aside its May 12th, 2008 Order denying the defendant's motion [445] which, pursuant to 18 U.S.C. §3582 (c) (2) requested that this Court re-open and modify the judgment in this criminal case which this Court entered on August 15, 2003 imposing a term of **110 months** of imprisonment upon Mr. Lorenzo because of his conviction of conspiracy to possess with intent to distribute crack in violation of 21 USC § 846 & 841, pursuant to the then U.S. Sentencing Commission's "Crack" guidelines.

The defense again entreats this Court to reduce Mr. Lorenzo's sentence to **92 months**.

This Court denied the defendant's motion because it felt that the original § 2D1.1 (a) (3) reduction of two points from Mr. Lorenzo's original base offense level of 32 by dint of his receipt of a mitigating role reduction operated as a bar; pursuant to 18 U.S.C. § 3582 (c) (2), to the lowering of Mr. Lorenzo's "applicable guideline range" by the retroactive operation of the crack cocaine amendment to the U.S. Sentencing Guidelines effective November 1, 2007. The defense submits that this conclusion is wrong. The decision is in error because § 2D1.1 (a) (3)'s reduction was not designed to reduce the base offense level for crack cocaine for the

reasons behind the November 1, 2007 amendment. The § 2D1.1 (a) (3) reduction has nothing what so ever to do with the crack cocaine disparity and it still leaves that disparity in place.

The defense submits that in order to give full and correct effect of the crack cocaine amendment the guideline computation should be carried out, thusly:

```
50 but <150 grams of cocaine base:      32
§ 2D1.1 (a) (3) cap:                    - 2
                                         30
Crack cocaine amendment:                - 2
******BASE OFFENSE LEVEL----------       28

§ 3B 1.2 (b) Mitigating Role reduction: - 2
     ADJUSTED OFFENSE LEVEL-----         26
§§ 3E 1.1(a) & (b)(2) reductions:       - 3
     TOTAL OFFENSE LEVEL---------        23
```

Therefore, the amendment does in fact does in fact change Mr. Lorenzo's guideline range and this result is consistent with the purposes of the crack cocaine amendment and is in tandem with the U.S. Probation Department's March 6, 2008 Addendum to Mr. Lorenzo's PSR; salient features of which appear below:

| ORIGINAL GUIDELINES CALCULATIONS | REVISED GUIDELINES CALCULATIONS | |
|---|---|---|
| Total Offense Level: 25 | Total Offense Level: | 23 |
| Criminal History Category: VI | Criminal History Category: | VI |
| Imprisonment Range: 110 - 137 | Imprisonment Range: | 92 - 115 |
| Difference in Sentencing Range: 18 - 22 months | | |

Additionally, the U.S. Sentencing Commission (Commission) expressed in its Commentary to the November 1, 2007 amendment to the Federal sentencing guidelines for crack cocaine offenses the fact that its amendment "is neither a **permanent** nor a **complete**

solution to" the 100 to 1 drug quantity ratio within the criminal statute. (See page 47 of the Commentary, attached. Emphasis supplied.) (See, Addendum I) The limitation of the amendment to do full justice upon this issue is set out in the Commission's Commentary itself:

> The Commission, however, views the amendment only as an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to those problems. Any comprehensive solution to the 100-to-1 drug quantity ratio requires appropriate legislative action by Congress.

(Commentary at page 47 to §2D1.1 (E) USSC)

The Commission's unrelenting observation that the statutory 100 to 1 drug ratio does harm to our system of justice is captured below:

> Current data and information continue to support the Commission's consistently held position that the 100-to-1 drug quantity ration **significantly undermines** various congressional objectives set forth in the Sentencing Reform Act and **elsewhere.**

(Commentary at page 46 to §2D1.1 (E) USSC. (Emphasis added)

Given the fact of the Commission's position upon this question clearly supports a downward departure pursuant to §§5K2.0 (1) (A), (2) (B), (3) and/or (4). (See, Addendum II.)

The fact that the Commission Commentary and reports have indicated that its attempt to deal with the 100-to1 ratio has not adequately resolved the problem supports a departure in Mr. Lorenzo's case below the total offense level of 25 found by this Court.

Even after a consideration of the sentencing factors contained in 18 USC §3553 (a) it is clear that a reduction in Mr. Lorenzo's sentence to 92 months is warranted based upon all of the reasons advanced by the Commission in amending the crack section to the guidelines. The sentence modification that Mr. Lorenzo seeks is fully consistent with the spirit of the Commission's amendments upon this subject of crack and more over; "such a reduction is

3

consistent with applicable policy statements issued by the Sentencing Commission." 18 USC §3582 (2).

For all of the reasons advanced, the defense entreats this Court for a full hearing in open Court, with Mr. Lorenzo present, upon this motion, reconsideration of its prior order, the setting of that Order aside and a reduction in the defendant's sentence consonant with the spirit of this motion.

RESPECTFULLY SUBMITTED,

JEFFREY LORENZO
THE DEFENDANT

BY: _____
ATTY. ERSKINE D. McINTOSH
FEDERAL BAR No.: CT/9743
THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CONN. 06518-2364
PH. (203) 787-9994--- (203) 848-1213 Fax

COUNSEL FOR THE DEFENSE

### CERTIFICATION

This is to certify that the foregoing motion was mailed on May 29, 2008 to the following:

Atty. Mike Gustafson
United States Attorney's Office
District of Connecticut
450 Main Street
Hartford, CT 06103

_____
ATTY. ERSKINE D. McINTOSH

17-1 MOTION-RECONSIDERATION OF DECISION RE: MODIFY A SENTENCE-LORENZO

## *ADDENDUM I*

*ADDENDUM I*

# AMENDMENTS TO THE SENTENCING GUIDELINES

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the sentencing guidelines and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2007, for these amendments.

## Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary

1. Compassionate Release

Amendment: The Commentary to §1B1.13 captioned "Application Notes" is amended in Note 1 by striking subdivision (A) and inserting the following:

"(A) <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:

   (i)   The defendant is suffering from a terminal illness.

   (ii)  The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.

   (iii) The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.

   (iv)  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (i), (ii), and (iii).".

The Commentary to §1B1.13 is amended by striking "<u>Background</u>" and all that follows through the end of "statute." and inserting the following:

"<u>Background</u>: This policy statement implements 28 U.S.C. § 994(t).".

Reason for Amendment: This amendment modifies the policy statement at §1B1.13 (Reduction in Term of Imprisonment as a Result of Motion by Director of Bureau of Prisons) to further effectuate the directive in 28 U.S.C. § 994(t). Section 994(t) provides that the Commission "in promulgating general policy statements regarding the sentence

1

methamphetamine on a premises where a minor is present or resides presents a greater harm than discharging a hazardous substance into the environment, but is a lesser harm than the substantial risk of harm to adults or to the environment created by the manufacture of methamphetamine. Therefore, the amendment adds a new tier to the enhancement in the new subdivision (b)(10)(B) in order to account for this conduct. A defendant convicted under 21 U.S.C. § 860a for distributing, or possessing with the intent to distribute, methamphetamine on a premises where a minor is present or resides will receive a two-level enhancement, with a minimum offense level of 14.

To address the overlap of conduct covered by the enhancement for the substantial risk of harm to the life of a minor and the new offense of manufacturing, or possessing with the intent to manufacture, methamphetamine on a premises where a minor is present or resides, a three-level enhancement and a minimum offense level of level 27 will apply in a case in which a minor is present, but in which the offense did not create a substantial risk of harm to the life of a minor. In any methamphetamine manufacturing offense which creates a substantial risk of harm to the life of a minor, a six-level enhancement and a minimum offense level of level 30 will apply.

Sixth, the amendment updates Appendix A (Statutory Index) to include references to the new offenses created by the PATRIOT Reauthorization and Adam Walsh Acts.

9. Cocaine Base Sentencing

Amendment: Section 2D1.1(c)(1) is amended by striking "1.5 KG or more of Cocaine Base" and inserting "4.5 KG or more of Cocaine Base".

Section 2D1.1(c)(2) is amended by striking "At least 500 G but less than 1.5 KG of Cocaine Base" and inserting "At least 1.5 KG but less than 4.5 KG of Cocaine Base".

Section 2D1.1(c)(3) is amended by striking "At least 150 G but less than 500 G of Cocaine Base" and inserting "At least 500 G but less than 1.5 KG of Cocaine Base".

Section 2D1.1(c)(4) is amended by striking "At least 50 G but less than 150 G of Cocaine Base" and inserting "At least 150 G but less than 500 G of Cocaine Base".

Section 2D1.1(c)(5) is amended by striking "At least 35 G but less than 50 G of Cocaine Base" and inserting "At least 50 G but less than 150 G of Cocaine Base".

Section 2D1.1(c)(6) is amended by striking "At least 20 G but less than 35 G of Cocaine Base" and inserting "At least 35 G but less than 50 G of Cocaine Base".

Section 2D1.1(c)(7) is amended by striking "At least 5 G but less than 20 G of Cocaine Base" and inserting "At least 20 G but less than 35 G of Cocaine Base".

Section 2D1.1(c)(8) is amended by striking "At least 4 G but less than 5 G of Cocaine Base" and inserting "At least 5 G but less than 20 G of Cocaine Base".

Section 2D1.1(c)(9) is amended by striking "At least 3 G but less than 4 G of Cocaine Base" and inserting "At least 4 G but less than 5 G of Cocaine Base".

Section 2D1.1(c)(10) is amended by striking "At least 2 G but less than 3 G of Cocaine Base" and inserting "At least 3 G but less than 4 G of Cocaine Base".

Section 2D1.1(c)(11) is amended by striking "At least 1 G but less than 2 G of Cocaine Base" and inserting "At least 2 G but less than 3 G of Cocaine Base".

Section 2D1.1(c)(12) is amended by striking "At least 500 MG but less than 1 G of Cocaine Base" and inserting "At least 1 G but less than 2 G of Cocaine Base".

Section 2D1.1(c)(13) is amended by striking "At least 250 MG but less than 500 MG of Cocaine Base" and inserting "At least 500 MG but less than 1 G of Cocaine Base".

Section 2D1.1(c)(14) is amended by striking "Less than 250 MG of Cocaine Base" and inserting "Less than 500 MG of Cocaine Base".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 in the first paragraph by inserting before "The Commission has used the sentences" the following :

"Use of Drug Equivalency Tables.—

(A)   Controlled Substances Not Referenced in Drug Quantity Table.—";

by striking "(A)" before "Use" and inserting "(i)"; by striking "(B)" before "Find" and inserting "(ii)"; and by striking "(C)" before "Use" and inserting "(iii)";

in the second paragraph by striking "The Drug Equivalency Tables also provide" and inserting the following:

"(B)   Combining Differing Controlled Substances (Except Cocaine Base).—The Drug Equivalency Tables also provide";

and by adding at the end the following:

"To determine a single offense level in a case involving cocaine base and other controlled substances, see subdivision (D) of this note.".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 in the

43

subdivision captioned "<u>Examples</u>:" by striking "<u>Examples</u>:" and inserting the following:

"(C) <u>Examples for Combining Differing Controlled Substances (Except Cocaine Base)</u>.—";

and by redesignating examples "a." through "d." as examples (i) through (iv), respectively.

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 by inserting after example (iv), as redesignated by this amendment, the following:

"(D) <u>Determining Base Offense Level in Offenses Involving Cocaine Base and Other Controlled Substances</u>.—

    (i) <u>In General</u>.—If the offense involves cocaine base ('crack') and one or more other controlled substance, determine the base offense level as follows:

        (I) Determine the combined base offense level for the other controlled substance or controlled substances as provided in subdivision (B) of this note.

        (II) Use the combined base offense level determined under subdivision (B) of this note to obtain the appropriate marihuana equivalency for the cocaine base involved in the offense using the following table:

| Base Offense Level | Marihuana Equivalency |
|---|---|
| 38 | 6.7 kg of marihuana |
| 36 | 6.7 kg of marihuana |
| 34 | 6 kg of marihuana |
| 32 | 6.7 kg of marihuana |
| 30 | 14 kg of marihuana |
| 28 | 11.4 kg of marihuana |
| 26 | 5 kg of marihuana |
| 24 | 16 kg of marihuana |
| 22 | 15 kg of marihuana |
| 20 | 13.3 kg of marihuana |
| 18 | 10 kg of marihuana |
| 16 | 10 kg of marihuana |
| 14 | 10 kg of marihuana |
| 12 | 10 kg of marihuana. |

      (III)    Using the marihuana equivalency obtained from the table in subdivision (II), convert the quantity of cocaine base involved in the offense to its equivalent quantity of marihuana.

      (IV)    Add the quantity of marihuana determined under subdivisions (i) and (III), and look up the total in the Drug Quantity Table to obtain the combined base offense level for all the controlled substances involved in the offense.

(ii)    <u>Example</u>.—The case involves 1.5 kg of cocaine, 10 kg of marihuana, and 20 g of cocaine base. Pursuant to subdivision (B), the equivalent quantity of marihuana for the cocaine and the marihuana is 310 kg. (The cocaine converts to an equivalent of 300 kg of marihuana (1.5 kg x 200 g = 300 kg), which when added to the quantity of marihuana involved in the offense, results in an equivalent quantity of 310 kg of marihuana.) This corresponds to a base offense level 26. Pursuant to the table in subdivision (II), the base offense level of 26 results in a marihuana equivalency of 5 kg for the cocaine base. Using this marihuana equivalency for the cocaine base results in a marihuana equivalency of 100 kg (20 g x 5 kg = 100 kg). Adding the quantities of marihuana of all three controlled substances results in a combined quantity of 410 kg of marihuana, which corresponds to a combined base offense level of 28 in the Drug Quantity Table.".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 by striking "<u>DRUG EQUIVALENCY TABLES</u>" and inserting the following:

"(E)   <u>Drug Equivalency Tables</u>.—";

and in the subdivision captioned "Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)" by striking "1 gm of Cocaine Base ('Crack') = 20 kg of marihuana".

Reason for Amendment: The Commission identified as a policy priority for the amendment cycle ending May 1, 2007, "continuation of its work with the congressional, executive, and judicial branches of the government and other interested parties on cocaine sentencing policy," including reevaluating the Commission's 2002 report to Congress, <u>Cocaine and Federal Sentencing Policy</u>. As a result of the Anti-Drug Abuse Act of 1986, Pub. L. 99–570, 21 U.S.C. § 841(b)(1) requires a five-year mandatory minimum penalty for a first-time trafficking offense involving 5 grams or more of crack cocaine, or 500 grams of powder cocaine, and a ten-year mandatory minimum penalty for a first-time trafficking offense involving 50 grams or more of crack cocaine, or 5,000 grams or more of powder cocaine. Because 100 times more powder cocaine than crack cocaine is required to trigger the same mandatory minimum penalty, this penalty

structure is commonly referred to as the "100-to-1 drug quantity ratio."

To assist the Commission in its consideration of Federal cocaine sentencing policy, the Commission received statements and heard expert testimony from the Executive Branch, the Federal judiciary, defense practitioners, state and local law enforcement representatives, medical and treatment experts, academicians, social scientists, and interested community representatives at hearings on November 14, 2006, and March 20, 2007. The Commission also received substantial written public comment on Federal cocaine sentencing policy throughout the amendment cycle.

During the amendment cycle, the Commission updated its analysis of key sentencing data about cocaine offenses and offenders; reviewed recent scientific literature regarding cocaine use, effects, dependency, prenatal effects, and prevalence; researched trends in cocaine trafficking patterns, price, and use; surveyed the state laws regarding cocaine penalties; and monitored case law developments.

Current data and information continue to support the Commission's consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere. These findings will be more thoroughly explained in a forthcoming report that will present to Congress, on or before May 15, 2007, a number of recommendations for modifications to the statutory penalties for crack cocaine offenses. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

The Commission's recommendation and strong desire for prompt legislative action notwithstanding, the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems. The Commission has concluded that the manner in which the Drug Quantity Table in §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy)) was constructed to incorporate the statutory mandatory minimum penalties for crack cocaine offenses is an area in which the Federal sentencing guidelines contribute to the problems associated with the 100-to-1 drug quantity ratio.

When Congress passed the 1986 Act, the Commission responded by generally incorporating the statutory mandatory minimum sentences into the guidelines and extrapolating upward and downward to set guideline sentencing ranges for all drug quantities. The drug quantity thresholds in the Drug Quantity Table are set so as to provide base offense levels corresponding to guideline ranges that are <u>above</u> the statutory mandatory minimum penalties. Accordingly, offenses involving 5 grams or more of crack cocaine were assigned a base offense level (level 26) corresponding to a sentencing guideline range of 63 to 78 months for a defendant in Criminal History Category I (a guideline range that exceeds the five-year statutory minimum for such offenses by at least

46

three months). Similarly, offenses involving 50 grams or more of crack cocaine were assigned a base offense level (level 32) corresponding to a sentencing guideline range of 121 to 151 months for a defendant in Criminal History Category I (a guideline range that exceeds the ten-year statutory minimum for such offenses by at least one month). Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities were set accordingly using the 100-to-1 drug quantity ratio.

This amendment modifies the drug quantity thresholds in the Drug Quantity Table so as to assign, for crack cocaine offenses, base offense levels corresponding to guideline ranges that <u>include</u> the statutory mandatory minimum penalties. Accordingly, pursuant to the amendment, 5 grams of cocaine base are assigned a base offense level of 24 (51 to 63 months at Criminal History Category I, which includes the five-year (60 month) statutory minimum for such offenses), and 50 grams of cocaine base are assigned a base offense level of 30 (97 to 121 months at Criminal History Category I, which includes the ten-year (120 month) statutory minimum for such offenses). Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward by two levels. The amendment also includes a mechanism to determine a combined base offense level in an offense involving crack cocaine and other controlled substances.

The Commission's prison impact model predicts that, assuming no change in the existing statutory mandatory minimum penalties, this modification to the Drug Quantity Table will affect 69.7 percent of crack cocaine offenses sentenced under §2D1.1 and will result in a reduction in the estimated average sentence of all crack cocaine offenses from 121 months to 106 months, based on an analysis of cases sentenced in fiscal year 2006 under §2D1.1 involving crack cocaine.

Having concluded once again that the 100-to-1 drug quantity ratio should be modified, the Commission recognizes that establishing federal cocaine sentencing policy ultimately is Congress's prerogative. Accordingly, the Commission tailored the amendment to fit within the existing statutory penalty scheme by assigning base offense levels that provide guideline ranges that include the statutory mandatory minimum penalties for crack cocaine offenses. The Commission, however, views the amendment only as an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to those problems. Any comprehensive solution to the 100-to-1 drug quantity ratio requires appropriate legislative action by Congress.

10. Technical Amendments

Amendment: Section 2D1.11(a) is amended by striking "(e)" after "under subsection" and inserting "(d)".

The Commentary to §2K2.1 captioned "Application Notes" is amended in Note 4 in

47

### ADDENDUM II

### ADDENDUM II

# 2007 Federal Sentencing Guidelines

# CHAPTER FIVE - PART K - DEPARTURES

## 2. OTHER GROUNDS FOR DEPARTURE

Historical Note: Effective November 1, 1987. Amended effective November 1, 1990 (see Appendix C, amendment 358).

### §5K2.0. Grounds for Departure (Policy Statement)

(a) UPWARD DEPARTURES IN GENERAL AND DOWNWARD DEPARTURES IN CRIMINAL CASES OTHER THAN CHILD CRIMES AND SEXUAL OFFENSES.—

   (1) IN GENERAL.—The sentencing court may depart from the applicable guideline range if—

      (A) in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance; or

      (B) in the case of child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), that there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

   (2) DEPARTURES BASED ON CIRCUMSTANCES OF A KIND NOT ADEQUATELY TAKEN INTO CONSIDERATION.—

      (A) IDENTIFIED CIRCUMSTANCES.—This subpart (Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)) identifies some of the circumstances that the Commission may have not adequately taken into consideration in determining the applicable guideline range (e.g., as a specific offense characteristic or other adjustment). If any such circumstance is present in the case and has not adequately been taken into consideration in determining the applicable guideline range, a departure consistent with 18 U.S.C. § 3553(b) and the provisions of this subpart may be warranted.

      (B) UNIDENTIFIED CIRCUMSTANCES.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.

   (3) DEPARTURES BASED ON CIRCUMSTANCES PRESENT TO A DEGREE NOT ADEQUATELY TAKEN INTO CONSIDERATION.—A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense.

   (4) DEPARTURES BASED ON NOT ORDINARILY RELEVANT OFFENDER CHARACTERISTICS AND OTHER CIRCUMSTANCES.—An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

(b) DOWNWARD DEPARTURES IN CHILD CRIMES AND SEXUAL OFFENSES.—Under 18 U.S.C. § 3553(b)

(2)(A)(ii), the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that—

    (1) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;

    (2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and

    (3) should result in a sentence different from that described.

The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

(c) LIMITATION ON DEPARTURES BASED ON MULTIPLE CIRCUMSTANCES.—The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if—

    (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and

    (2) each such offender characteristic or other circumstance is—

        (A) present to a substantial degree; and

        (B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

(d) PROHIBITED DEPARTURES.—Notwithstanding subsections (a) and (b) of this policy statement, or any other provision in the guidelines, the court may not depart from the applicable guideline range based on any of the following circumstances:

    (1) Any circumstance specifically prohibited as a ground for departure in §§5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status), 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances), the third and last sentences of 5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction), the last sentence of 5K2.12 (Coercion and Duress), and 5K2.19 (Post-Sentencing Rehabilitative Efforts).

    (2) The defendant's acceptance of responsibility for the offense, which may be taken into account only under §3E1.1 (Acceptance of Responsibility).

    (3) The defendant's aggravating or mitigating role in the offense, which may be taken into account only under §3B1.1 (Aggravating Role) or §3B1.2 (Mitigating Role), respectively.

    (4) The defendant's decision, in and of itself, to plead guilty to the offense or to enter a plea agreement with respect to the offense (i.e., a departure may not be based merely on the fact that the defendant decided to plead guilty or to enter into a plea agreement, but a departure may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court. See §6B1.2 (Standards for Acceptance of Plea Agreement).

    (5) The defendant's fulfillment of restitution obligations only to the extent required by law including

the guidelines (i.e., a departure may not be based on unexceptional efforts to remedy the harm caused by the offense).

(6) Any other circumstance specifically prohibited as a ground for departure in the guidelines.

(e) REQUIREMENT OF SPECIFIC WRITTEN REASONS FOR DEPARTURE.—If the court departs from the applicable guideline range, it shall state, pursuant to 18 U.S.C. § 3553(c), its specific reasons for departure in open court at the time of sentencing and, with limited exception in the case of statements received in camera, shall state those reasons with specificity in the written judgment and commitment order.

Commentary

Application Notes:

1. Definitions.—For purposes of this policy statement:

"Circumstance" includes, as appropriate, an offender characteristic or any other offense factor.

"Depart", "departure", "downward departure", and "upward departure" have the meaning given those terms in Application Note 1 of the Commentary to §1B1.1 (Application Instructions).

2. Scope of this Policy Statement.—

(A) Departures Covered by this Policy Statement.—This policy statement covers departures from the applicable guideline range based on offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining that range. See 18 U.S.C. § 3553(b).

Subsection (a) of this policy statement applies to upward departures in all cases covered by the guidelines and to downward departures in all such cases except for downward departures in child crimes and sexual offenses.

Subsection (b) of this policy statement applies only to downward departures in child crimes and sexual offenses.

(B) Departures Covered by Other Guidelines.—This policy statement does not cover the following departures, which are addressed elsewhere in the guidelines: (i) departures based on the defendant's criminal history (see Chapter Four (Criminal History and Criminal Livelihood), particularly §4A1.3 (Departures Based on Inadequacy of Criminal History Category)); (ii) departures based on the defendant's substantial assistance to the authorities (see §5K1.1 (Substantial Assistance to Authorities)); and (iii) departures based on early disposition programs (see §5K3.1 (Early Disposition Programs)).

3. Kinds and Expected Frequency of Departures under Subsection (a).—As set forth in subsection (a), there generally are two kinds of departures from the guidelines based on offense characteristics and/or offender characteristics: (A) departures based on circumstances of a kind not adequately taken into consideration in the guidelines; and (B) departures based on circumstances that are present to a degree not adequately taken into consideration in the guidelines.

(A) Departures Based on Circumstances of a Kind Not Adequately Taken into Account in Guidelines.—Subsection (a)(2) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553(b) (2)(A)(i), of a kind not adequately taken into consideration in the guidelines.

(i) Identified Circumstances.—This subpart (Chapter Five, Part K, Subpart 2) identifies several circumstances that the Commission may have not adequately taken into consideration in setting the

offense level for certain cases. Offense guidelines in Chapter Two (Offense Conduct) and adjustments in Chapter Three (Adjustments) sometimes identify circumstances the Commission may have not adequately taken into consideration in setting the offense level for offenses covered by those guidelines. If the offense guideline in Chapter Two or an adjustment in Chapter Three does not adequately take that circumstance into consideration in setting the offense level for the offense, and only to the extent not adequately taken into consideration, a departure based on that circumstance may be warranted.

(ii) <u>Unidentified Circumstances</u>.—A case may involve circumstances, in addition to those identified by the guidelines, that have not adequately been taken into consideration by the Commission, and the presence of any such circumstance may warrant departure from the guidelines in that case. However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to take into consideration relevant circumstances in sentencing, it is expected that departures based on such unidentified circumstances will occur rarely and only in exceptional cases.

(B) <u>Departures Based on Circumstances Present to a Degree Not Adequately Taken into Consideration in Guidelines</u>.—

(i) <u>In General</u>.—Subsection (a)(3) authorizes the court to depart if there exists an aggravating or a mitigating circumstance in a case under 18 U.S.C. § 3553(b)(1), or an aggravating circumstance in a case under 18 U.S.C. § 3553(b)(2)(A)(i), to a degree not adequately taken into consideration in the guidelines. However, inasmuch as the Commission has continued to monitor and refine the guidelines since their inception to determine the most appropriate weight to be accorded the mitigating and aggravating circumstances specified in the guidelines, it is expected that departures based on the weight accorded to any such circumstance will occur rarely and only in exceptional cases.

(ii) <u>Examples</u>.—As set forth in subsection (a)(3), if the applicable offense guideline and adjustments take into consideration a circumstance identified in this subpart, departure is warranted only if the circumstance is present to a degree substantially in excess of that which ordinarily is involved in the offense. Accordingly, a departure pursuant to §5K2.7 for the disruption of a governmental function would have to be substantial to warrant departure from the guidelines when the applicable offense guideline is bribery or obstruction of justice. When the guideline covering the mailing of injurious articles is applicable, however, and the offense caused disruption of a governmental function, departure from the applicable guideline range more readily would be appropriate. Similarly, physical injury would not warrant departure from the guidelines when the robbery offense guideline is applicable because the robbery guideline includes a specific adjustment based on the extent of any injury. However, because the robbery guideline does not deal with injury to more than one victim, departure may be warranted if several persons were injured.

(C) <u>Departures Based on Circumstances Identified as Not Ordinarily Relevant</u>.— Because certain circumstances are specified in the guidelines as not ordinarily relevant to sentencing (see, e.g., Chapter Five, Part H (Specific Offender Characteristics)), a departure based on any one of such circumstances should occur only in exceptional cases, and only if the circumstance is present in the case to an exceptional degree. If two or more of such circumstances each is present in the case to a substantial degree, however, and taken together make the case an exceptional one, the court may consider whether a departure would be warranted pursuant to subsection (c). Departures based on a combination of not ordinarily

relevant circumstances that are present to a substantial degree should occur extremely rarely and only in exceptional cases.

In addition, as required by subsection (e), each circumstance forming the basis for a departure described in this subdivision shall be stated with specificity in the written judgment and commitment order.

4. *Downward Departures in Child Crimes and Sexual Offenses.—*

(A) *Definition.*—For purposes of this policy statement, the term "child crimes and sexual offenses" means offenses under any of the following: 18 U.S.C. § 1201 (involving a minor victim), 18 U.S.C. § 1591, or chapter 71, 109A, 110, or 117 of title 18, United States Code.

(B) *Standard for Departure.—*

(i) *Requirement of Affirmative and Specific Identification of Departure Ground.*—The standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures under this policy statement in that it includes a requirement, set forth in 18 U.S.C. § 3553(b)(2)(A)(ii)(I) and subsection (b)(1) of this guideline, that any mitigating circumstance that forms the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure in this part (*i.e.*, Chapter Five, Part K).

(ii) *Application of Subsection (b)(2).*—The commentary in Application Note 3 of this policy statement, except for the commentary in Application Note 3(A)(ii) relating to unidentified circumstances, shall apply to the court's determination of whether a case meets the requirement, set forth in subsection 18 U.S.C. § 3553(b)(2)(A)(ii)(II) and subsection (b)(2) of this policy statement, that the mitigating circumstance forming the basis for a downward departure in child crimes and sexual offenses be of kind, or to a degree, not adequately taken into consideration by the Commission.

5. *Departures Based on Plea Agreements.*—Subsection (d)(4) prohibits a downward departure based only on the defendant's decision, in and of itself, to plead guilty to the offense or to enter a plea agreement with respect to the offense. Even though a departure may not be based merely on the fact that the defendant agreed to plead guilty or enter a plea agreement, a departure may be based on justifiable, non-prohibited reasons for departure as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court. *See* §6B1.2 (Standards for Acceptance of Plea Agreements). In cases in which the court departs based on such reasons as set forth in the plea agreement, the court must state the reasons for departure with specificity in the written judgment and commitment order, as required by subsection (e).

*Background:* This policy statement sets forth the standards for departing from the applicable guideline range based on offense and offender characteristics of a kind, or to a degree, not adequately considered by the Commission. Circumstances the Commission has determined are not ordinarily relevant to determining whether a departure is warranted or are prohibited as bases for departure are addressed in Chapter Five, Part H (Offender Characteristics) and in this policy statement. Other departures, such as those based on the defendant's criminal history, the defendant's substantial assistance to authorities, and early disposition programs, are addressed elsewhere in the guidelines.

As acknowledged by Congress in the Sentencing Reform Act and by the Commission when the first set of guidelines was promulgated, "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." (*See* Historical Note to §1A1.1 (Authority)). Departures, therefore, perform an integral function in the sentencing guideline system. Departures permit courts to impose an appropriate sentence in the exceptional case in which mechanical application of the guidelines would fail to achieve the statutory purposes and goals of sentencing. Departures also help maintain "sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." 28 U.S.C. § 991(b)(1)(B). By monitoring

2007 Federal Sentencing Guidelines Manual - Chapter 5
Case 3:01-cr-00263-AVC Document 450 Filed 06/03/2008 Page 19 of 19

Page 6 of 6

when courts depart from the guidelines and by analyzing their stated reasons for doing so, along with appellate cases reviewing these departures, the Commission can further refine the guidelines to specify more precisely when departures should and should not be permitted.

As reaffirmed in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "PROTECT Act", Public Law 108–21), circumstances warranting departure should be rare. Departures were never intended to permit sentencing courts to substitute their policy judgments for those of Congress and the Sentencing Commission. Departure in such circumstances would produce unwarranted sentencing disparity, which the Sentencing Reform Act was designed to avoid.

In order for appellate courts to fulfill their statutory duties under 18 U.S.C. § 3742 and for the Commission to fulfill its ongoing responsibility to refine the guidelines in light of information it receives on departures, it is essential that sentencing courts state with specificity the reasons for departure, as required by the PROTECT Act.

This policy statement, including its commentary, was substantially revised, effective October 27, 2003, in response to directives contained in the PROTECT Act, particularly the directive in section 401(m) of that Act to—

"(1) review the grounds of downward departure that are authorized by the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission; and

(2) promulgate, pursuant to section 994 of title 28, United States Code—

(A) appropriate amendments to the sentencing guidelines, policy statements, and official commentary to ensure that the incidence of downward departures is substantially reduced;

(B) a policy statement authorizing a departure pursuant to an early disposition program; and

(C) any other conforming amendments to the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission necessitated by the Act, including a revision of ...section 5K2.0".

The substantial revision of this policy statement in response to the PROTECT Act was intended to refine the standards applicable to departures while giving due regard for concepts, such as the "heartland", that have evolved in departure jurisprudence over time.

Section 401(b)(1) of the PROTECT Act directly amended this policy statement to add subsection (b), effective April 30, 2003.

Historical Note: Effective November 1, 1987. Amended effective June 15, 1988 (see Appendix C, amendment 57); November 1, 1990 (see Appendix C, amendment 358); November 1, 1994 (see Appendix C, amendment 508); November 1, 1997 (see Appendix C, amendment 561); November 1, 1998 (see Appendix C, amendment 585); April 30, 2003 (see Appendix C, amendment 649); October 27, 2003 (see Appendix C, amendment 651).

http://www.ussc.gov/2007guid/5k2_0.html

3/26/2008